# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 475 | DATE | 1/9/2003 |
| CASE TITLE | AFD FUND vs. LUNAN CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. AmeriServe's motion for partial summary judgment is granted. Summary judgment is entered on Count I of AmeriServe's amended complaint. Partial summary judgment is granted as to Count I and Count II of Lunan's amended counterclaims.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | JAN 13 2003 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 03 JAN 10 PM 2:05 | date mailed notice |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 42

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFD FUND (as the post-confirmation estate of AMERISERVE FOOD DISTRIBUTION, INC., and its debtor affiliates), | ) ) ) ) |
| Plaintiff, | ) ) No. 02 C 0475 |
| v. | ) ) Judge John W. Darrah |
| LUNAN CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, AFD Fund ("AFD"), as the post-confirmation estate of AmeriServe Food Distribution, Incorporated ("AmeriServe"), filed suit against Defendant, Lunan Corporation ("Lunan"), alleging breach of contract. Lunan filed a counterclaim, also alleging breach of contract. Presently before the Court is AFD's Motion for Partial Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

DOCKETED JAN 13 2003

## BACKGROUND

AFD is the post-confirmation estate of AmeriServe and its debtor affiliates. AFD's headquarters are located in Addison, Texas. (Def.'s 56.1(a)(3) Statement ¶ 1). AmeriServe was a food distributor that supplied products to fast food restaurants throughout the United States. (Id., at ¶ 6). Lunan is an Illinois corporation that operates Arby's restaurants in Illinois, California, and Nevada. (Id., at ¶¶ 2, 7).

In 1999 and 2000, Lunan was a member of Arcop, a purchasing cooperative serving numerous Arby's restaurant owners. (Def.'s 56.1(a)(3) Statement ¶ 8). Lunan and other Arcop members paid Arcop a membership fee. In return, Arcop negotiated with suppliers and distributors and entered into contracts with those suppliers and distributors on behalf of Arcop's members. (Id., at ¶ 9). Effective January 1, 1999, AmeriServe entered into a Distributor Agreement with Arcop. (Id., at ¶ 10).

The Distributor Agreement set forth the terms and conditions under which AmeriServe would provide distribution services to Arcop's members, including sanitation requirements, pricing, payment requirements, and delivery performance requirements. (Def.'s 56.1(a)(3) Statement ¶ 12). The Distributor Agreement had a term of five years, until January 1, 2004. However, it could be terminated by mutual consent of Arcop and AmeriServe:

> In the event that Agreement is terminated by the mutual consent of the parties ... any supply by Distributor of the Products to the Members shall be on a month to month basis under the terms of this Agreement, and any such supply may be terminated by either party upon thirty (30) days' written notice to the other party.

(Id., at ¶ 13). Under the "standard payment and credit terms" of the Distributor Agreement, Arcop members were required to pay for deliveries within thirty days. (Id., at ¶ 15). The

Distributor Agreement also permitted AmeriServe to charge monthly interest at the rate of one and one-half percent per month on invoices that were unpaid after thirty days. (Id., at ¶ 16). AmeriServe and Arcop agreed to cooperate to obtain participation agreements from each of Arcop's members. (Id., at ¶ 18).

Lunan and AmeriServe entered into a Participation Agreement effective January 1, 1999. (Def.'s 56.1(a)(3) Statement ¶ 19). The Participation Agreement provided:

> Seller is an authorized distributor of restaurant food, packaging and supplies ("Products") to approved Arby's restaurants ("Restaurants") which are members of Arcop, Inc. ("Arcop"). Arcop and Seller are parties to a Distributor Agreement effective as of January 1, 1999 (the "Distributor Agreement").

(Id., at ¶ 21).

In the Participation Agreement, Lunan "agreed to purchase substantially all of its Products from [AmeriServe]." (Def.'s 56.1(a)(3) Statement ¶ 22). The Participation Agreement had a term of five years but could be terminated earlier upon termination of the Arcop/AmeriServe Distributor Agreement: "This Agreement shall be for a term ... subject to earlier termination if and when the Distributor Agreement is terminated by Arcop." (Id., at ¶ 24). The Participation Agreement did not state the specific terms and conditions under which AmeriServe would sell and Lunan would buy food products, *i.e.*, pricing, product specifications, payment obligations. (Id., at ¶ 23).

Between January 1, 1999 and March 4, 2000, AmeriServe delivered millions of dollars of food and supplies to Lunan's restaurants. During this time, the parties were operating under the terms of the Distributor Agreement and the Participation Agreement. (Def.'s 56.1(a)(3) Statement ¶ 25). Initially, AmeriServe provided distribution services only to Lunan's Illinois

3

restaurants. The Participation Agreement required Lunan to transfer its remaining restaurants to AmeriServe by April 1, 2000. (Id., at ¶¶ 26-27).

In November 1999, Lunan transferred its Nevada and California restaurants to AmeriServe. (Id., at ¶ 28). Sharon Schwarz ("Schwarz") was the Arby's account manager in the California distribution center. (Plaint.'s 56.1(a)(3) Statement ¶ 13). The California distribution center distributed products to Lunan's Nevada restaurant. (Id., at ¶ 14).

AmeriServe invoiced Lunan with payment terms. AmeriServe's invoices stated that payment terms were "Net 30 Days" and that "[A]n interest charge of 01.50 per month (18.00% annum) will be charged on all past due invoices." Def.'s 56.1(a)(3) Statement ¶ 29).

On January 31, 2000, AmeriServe filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). AmeriServe continued to provide distribution services to Lunan's restaurants as a debtor-in-possession. (Def.'s 56.1(a)(3) Statement ¶ 30). Prior to filing bankruptcy, some vendors refused to provide credit to AmeriServe. (Plaint.'s 56.1(a)(3) Statement ¶ 5). Some of these vendors supplied products that Arby's franchisees were using to provide products on credit to AmeriServe. (Id., at ¶ 7). In November 1999, AmeriServe, hired a financial consulting firm to help manage its cash and to put together a plan to restructure the finances of the company. (Id., at ¶ 10). At or around the time of filing bankruptcy, AmeriServe had run out of cash to pay its bills. (Id., at ¶ 9).

On February 16, 2000, Arcop filed a motion in the Bankruptcy Court seeking that court's leave to lift the automatic stay and allow it to terminate the Distributor Agreement. (Def.'s 56.1(a)(3) Statement ¶ 31). Arcop and AmeriServe ultimately executed a Stipulation and Order that terminated the Distributor Agreement by mutual consent. The order was entered by the

Bankruptcy Court on March 17, 2000, and states, in part:

> As of the entry date of this Order, the Distributor Agreement shall be and is hereby TERMINATED pursuant to the consent of the parties ... the termination is by mutual consent of the parties, provided, however, that AmeriServe shall not be obligated to continue delivery to the Members ... and the Members shall have no obligation to continue to order Product from AmeriServe....

(Id., at ¶ 32). Lunan became aware that the Arcop/AmeriServe relationship was being terminated and, during the first week of March 2000, transferred its business to another distributor, MBM. (Id., at ¶ 33).

Lunan has failed to pay AmeriServe for $1,479,004 in products it received from AmeriServe between January 1, 1999 and March 4, 2000. (Def.'s 56.1(a)(3) Statement ¶ 34). Lunan admits that it received the goods represented by this amount but has not paid for them. (Id., at ¶ 37). Interest on the invoices amounts to $776,477.25 as of November 30, 2002. (Id., at ¶ 38).

In September 11, 2000, Lunan filed a Proof of Claim against AmeriServe in the amount of $1,118,582 in the Bankruptcy Court. (Def.'s 56.1(a)(3) Statement ¶ 39). In its subsequently filed counterclaim, Lunan alleges that Count I "is deemed allowed because no objection has been filed to the claim". (Id., at ¶ 40). On May 22, 2002, AFD filed an objection to Lunan's Proof of Claim in the Bankruptcy Court. (Id., at ¶ 41).

Lunan's Proof of Claim contains six different categories of damages it claims were caused by AmeriServe. These categories total $1,118,582 and are:

> b) Sales decline January 2000 through April of 2000 ($304,397);
> c) Extra labor used for new distribution ($97,600);
> d) Increase in food, paper, and supply costs ... ($49,432);

5

e) Administrative costs used for distribution situation ($62,883);
f) Lost opportunity (long term effect on business) ($229,260);and
g) Reserve for surcharge ($305,000).

(Def.'s 56.1(a)(3) Statement ¶ 43). The $67,600 damages associated with additional labor costs is based on labor incurred in March through May 2000. (Id., at ¶ 44). Lunan claims that these damages were cause by "AmeriServe's termination of the supply agreement" and the "fact that MBM took over for AmeriServe". (Id., at ¶ 45). The $49,432 in damages associated with an increase in food, paper, and supply costs were incurred in March through May 2000. (Id., at ¶ 47). These damages were also caused by "AmeriServe's termination of the supply agreement" and the "fact that MBM took over for AmeriServe". (Id., at ¶ 47).

The $62,883 in administrative damages was calculated by identifying certain Lunan corporate employees, estimating that they spent 35 percent of their time dealing with distribution issues during the first 4 months of 2000 and then calculating 35 percent of their salaries during the January through April 2000 time frame. (Def.'s 56.1(a)(3) Statement ¶¶ 48-49). The corporate employees in question did not receive extra compensation for their work on distribution issues in 2000. (Id., at ¶ 50). Lunan did not pay an additional $62,883 in salaries in 2000. (Id., at ¶ 51).

Lunan also seeks $305,000 in damages associated with "reserve for surcharges". (Def.'s 56.1(a)(3) Statement ¶ 53). This claim did not arise out of AmeriServe's sales of products to Lunan. Rather, it arises out of AmeriServe's inability to pay suppliers. (Id., at ¶ 54). In 2000, Lunan's principal informed Steve Ganek ("Ganek"), Lunan's Controller, that it was possible that, at some point, Arby's franchises would be surcharged for amounts due to the suppliers from

AmeriServe. (Id., at ¶ 55). Lunan established, and still maintains, a reserve in the event it is forced to make a payment to AmeriServe's suppliers. (Id., at ¶ 56). To date, Lunan has not made any payments out of the reserve. (Id., at ¶ 57).

In his deposition, Ganek testified that there were instances where AmeriServe did not have available product to sell to Lunan's restaurant in a timely and efficient manner. (Plaint.'s 56.1(a)(3) Statement ¶ 21). For example, AmeriServe was unable to deliver products in Nevada in 1999 and in Illinois in 2000. (Id., at ¶ 23). Because of this, Lunan was required to buy products from other sources. (Id., at ¶ 22). Ganek was not given notice of the March 17, 2000 Bankruptcy Court order. However, he did receive a letter from Arcop in February 2000, stating that Arcop was terminating its relationship with AmeriServe. Ganek did not contact Arcop or AmeriServe after receiving the notice from Arcop. (Id., at ¶ 25; Def.'s Response to ¶ 25).

In or around late February 2000, Ganek was informed by Arcop that MBM, the new distributor, would be unable to immediately supply all of the products that Lunan would need to operate its business. As a result, Lunan was required to obtain products elsewhere. (Plaint's 56.1(a)(3) Statement ¶ 26). When MBM began distribution in March 2000, it put an emergency distribution program into place. Ganek did not know why an emergency distribution program was put into place. (Id., at ¶ 27; Def.'s Response to ¶ 27).

Ganek also testified, that because of AmeriServe's inability to deliver pursuant to their agreement, Lunan was not able to follow its marketing plans for early 2000. It was not able to run promotions that were planned when competitors were also promoting products. This led to a decline in sales. (Plaint.'s 56.1(a)(3) Statement ¶ 29). Ganek was also unable to work on a project to refinance debt to a lower interest rate because his attention was diverted by the

7

AmeriServe problem. (Id., at ¶ 33). Other employees were also unable to work on other tasks. Michael Schulson was unable to look for new sites for restaurants and other business opportunities. (Id., at ¶ 34). Tony Stella also spent a great deal of time guiding the stores on how to input inventory into the computers because the products were not being acquired through the standard distribution system. (Id., at ¶ 35).

## ANALYSIS

The instant case is before the Court based on diversity jurisdiction. Federal courts look to the choice-of-law rules of the forum state when exercising diversity jurisdiction. *West Suburban Bank of Darien v. Badger Mut. Ins. Co.*, 141 F.3d 720, 724 (7th Cir. 1998). Illinois law defers to the contractual choice-of-law provision if such is provided in the contract. If the contract does not contain a choice-of-law provision, the court reverts to the choice-of-law rules provided by Illinois common law. See *Diamond State Ins. Co v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 611 N.E.2d 1083, 1093 (1993).

The Distribution Agreement contains a choice-of-law provision, providing that the agreement shall be construed and governed in accordance with the laws of the state of Georgia. Accordingly, Georgia law must be applied to any alleged breach of the Distributor Agreement.

The Participation Agreement does not contain a choice-of-law provision. Pursuant to Illinois law, the Court applies the most significant contacts rule where the parties have neglected to make a choice of law. *See Olsen v. Celano*, 234 Ill. App. 3d 1045, 1050 (1992) (*Olsen*). Factors reviewed under the most significant contact test include: the place of contracting, negotiation, and performance; location of the subject matter of the contract; and the domicile, residence, and place of incorporation and business of the parties. *Olsen*, 234 Ill. App. 3d at 1050.

The parties did not brief this issue except for a short footnote in AFD's Memorandum of Law in which it states that it believes that Illinois law would govern the action. It is unclear if AFD believes that Illinois law applies to both agreements.

As to the Participation Agreement, based on the limited information provided, Illinois law would apply. Lunan is headquartered in Illinois, and the majority of the deliveries occurred in Illinois. Furthermore, both parties have apparently conceded to the application of Illinois law as it is the law applied in the briefs by the parties. *See Gonzalez v. Volvo of America Corp.*, 725 F.2d 295, 298 (7th Cir. 1985). Accordingly, Illinois law is applied to any contract dispute relating to the Participation Agreement.

In Count I of its Amended Complaint, AFD asserts that Lunan breached its obligations under the Distributor Agreement and the Participation Agreement by failing to pay for products it received from AmeriServe.

To sustain a breach of contract claim under Georgia law, a plaintiff must establish a valid contract, a material breach of the contract's terms, and damages arising from the breach. *See TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ill. 1995), citing *Cartin v. Boles*, 155 Ga. App. 248, 252 (1980). Similarly, to sustain a breach of contract action under Illinois law, a plaintiff must establish that a contract exists between the parties, that plaintiff performed its obligations under the contract, that defendant did not perform its obligations under the contract, and an injury or damages as a result of the breach. *See Jackson v. Hammer*, 274 Ill. App. 3d 59, 64 (1995); *Berry v. Oak Park Hospital*, 256 Ill. App. 3d 11, 19 (1993).

Lunan admits that a valid contract exists between the parties. It further admits that it

9

received $1,479,004 worth of goods under the contract and that it was required to pay for such goods under the contract. Lastly, Lunan admits that it has not paid for the goods. While conceding these facts, Lunan argues that summary judgment is improper because AmeriServe also breached several provisions of the Distributor Agreement, including: not paying suppliers for products being delivered to Lunan, failing to maintain inventories of products required by Lunan, filing bankruptcy, and failing to allow a thirty-day transition period to another distributor.

A party that itself has breached a contract is entitled to recover damages against the other party who has failed in its contractual obligations unless the plaintiff's breach of contract is so material as to amount to a repudiation of the contract itself. *See America Net, Inc. v. U.S. Cover, Inc.*, 243 G. App. 204, 209 (2000) (*America Net*); *Travel Prof'ls Int'l, Inc. v. Access Travel, Inc.*, 234 Ga. App. 840, 843 (1998) (*Access Travel*); *see also Arrow Master, Inc. v. Unique Forming, Ltd.*, 12 F.3d 709, 714 (7th Cir. 1993) (*Arrow*) (under Illinois law, only a material breach of a contract provision can justify non-performance by the other party).

In the instant case, Lunan received and accepted products from AmeriServe from January 1999 through March 2000. Lunan failed to pay for any of these products. Lunan asserts that AmeriServe cannot recover in a breach of contract claim because AmeriServe breached the Distributor Agreement. However, Lunan presents no evidence that while it kept accepting AmeriServe's products it believed that AmeriServe was in breach of the Distributor Agreement or that such breach was material. Rather, Lunan continued to accept products from AmeriServe during the period of AmeriServe's alleged breach and failed to pay for such products. Under these undisputed facts, the conduct by AmeriServe did not constitute a breach so material that it repudiated the contract itself. *See America Net*, 243 G. App. at 209; *Access Travel*, 234 Ga. App.

10

at 843; *Allstate Ins. Co. v. Ackley*, 227 Ga. App. 104, 107 (1997) (where one party's course of conduct leads another to believe that it will not insist on strict compliance of a contract, one may not complain because the other party relies on the acquiescence); *see also Arrow*, 12 F.3d at 716; *Elda Arnhold Byzantio v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (the materiality inquiry focuses on two issues: the intent of the parties and the equitable factors and circumstances surrounding the breach of the provision).

Lunan also asserts that summary judgment is not proper because Lunan is not obligated to pay AmeriServe at this time in light of the proof of claim filed in the bankruptcy case and its counterclaims. For the same reason, Lunan argues that AmeriServe should not receive interest on the amount owed as allowed in the Distributor Agreement.

Lunan's arguments are without merit. AmeriServe has shown that Lunan breached its contracts with AmeriServe. The parties do not dispute the amount of damages or that the contract allowed for interest on unpaid invoices. Lunan's asserted offset, while eventually possibly decreasing the actual amount of damages AmeriServe receives, does not prohibit the Court from entering summary judgment on AmeriServe's breach of contract claim or allowing interest based on the unambiguous terms of the contract.

Based on the above, AFD's Motion for Summary Judgment as to Count I of its Amended Complaint is granted.

AmeriServe next argues that summary judgment on Lunan's first counterclaim should be granted because the basis of the counterclaim was based on AmeriServe's lack of filing an objection to the proof of claim. However, AmeriServe has subsequently filed such an objection.

Count I of Lunan's Amended Counterclaim is titled, "Action for Setoff Or Recoupment".

The count seeks a setoff pursuant to the Bankruptcy Code or the common law doctrine of recoupment. AmeriServe has demonstrated that Lunan's setoff pursuant to the Bankruptcy Code is no longer viable because it has filed an objection to the proof of claim. *See* 11 U.S.C. 502(a) ("[a] claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest ... objects."). Accordingly, AmeriServe's Motion for Partial Summary Judgment as to Count I of Lunan's Counterclaim is granted only as to its claim for setoff based on the Bankruptcy Code.

AmeriServe also seeks partial summary judgment on Count II of Lunan's Amended Counterclaim. First, AmeriServe asserts that Lunan's damages associated with extra labor and increased supply costs fail because they did not result from a breach of contract by AmeriServe. The basis of AmeriServe's assertion is that the Distributor Agreement and Participation Agreement had been terminated prior to these alleged damages. Lunan counters that it was damaged when AmeriServe was unable to continue performing under the Distributor Agreement and stopped performing without any transition period with the new distributor.

In opposition to AmeriServe's argument, Lunan only identifies statements made by Ganek that AmeriServe did not have available products to sell to Lunan's restaurant in a timely and efficient manner and, because of this, Lunan was required to buy products from other sources. However, Lunan has failed to present any evidence of sales and amounts due to specific delivery failures. Instead, it relies on Ganek's conclusory statements. Such statements are insufficient to create a genuine factual dispute precluding summary judgment. *See Stagman v. Ryan*, 176 F,3d 986, 995 (7th Cir. 1999); *Wolff v. Farris*, 1991 WL 14701 (N.D. Ill. Jan. 31, 1991). Accordingly, summary judgment as to damages based on these allegations is granted.

12

Lunan also claims damages based on an alleged failure to allow a months' transition period are recoverable. The Distributor Agreement provided that if the agreement was terminated, "any supply by the Distributor ... to the members shall be on a month to month basis under the terms of the Agreement, and any such supply may be terminated by either party upon thirty (30) days' notice to the other party." Lunan interprets this language as requiring a months' transition period to a new distributor once the Distributor Agreement is terminated. Prior to the Distributor Agreement being terminated, Lunan became aware that the Arcop/AmeriServe relationship was going to be terminated and, during the first week of March 2000, transferred its business to another distributor, MBM. On March 17, 2000, the Distributor Agreement was terminated by mutual consent of the parties.

Lunan asserts that its extra labor costs and increased supply costs were incurred because AmeriServe did not provide a months' transition period after the Distributor Agreement was terminated. However, as the above undisputed facts demonstrate, Lunan transferred its business to MBM prior to the termination of the Distributor Agreement. Therefore, it was impossible for AmeriServe to provide a transition period after the termination of the Distributor Agreement because Lunan had already transferred its business to MBM. Accordingly, these alleged damages cannot be based on AmeriServe's breach of the Distributor Agreement by failing to provide a transition period.

Next, AmeriServe asserts that Lunan's alleged damages of $305,000 for the reserve fund are not recoverable because Lunan has not made any payments out of the fund and that Lunan's voluntary payments to third parties are not damages caused by AmeriServe. Lunan counters that summary judgment is improper because a surcharge *may* still have to be paid.

Neither party identifies any language in the Distributor Agreement or the Participation Agreement that requires Lunan to maintain a reserve fund. Lunan voluntarily created the fund in case it was required to pay a future surcharge. Moreover, Lunan has not demonstrated it suffered such damages because it has not paid any funds to AmeriServe's suppliers. Accordingly, Lunan cannot prevail on a breach of contract claim for damages it has not incurred; and these damages are not allowed.

Lastly, as to damages, AmeriServe asserts that Lunan cannot recover damages for the salary it paid to its management because it would have paid such amounts regardless of the alleged breach of contract. Lunan asserts that these damages are computed based on the time that management spent handling the problems that arose because of the alleged breach. Lunan concedes that it did not seek to quantify the value of what the executives would have been able to accomplish had they not been required to work on the distribution problems.

The salaries Lunan paid to its management were not caused by any breach of either agreement. Lunan would have paid the salary to its management even if no distribution problems arose. Accordingly, these "damages" cannot be imposed on AmeriServe. In addition, Lunan does not support this claim with any specific evidence as to the specific management services rendered to resolve the alleged problems.

## CONCLUSION

For the foregoing reasons, AmeriServe's Motion for Partial Summary Judgment is granted. Summary judgment is entered on Count I of AmeriServe's Amended Complaint. Partial summary judgment is granted as to Count I and Count II of Lunan's Amended Counterclaims.

Dated: January 9, 2003

JOHN W. DARRAH
United States District Judge